## IN THE UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**THOMAS J. THOMAS**
    **Petitioner,**

**v.**                                                  **Case. No. 5:06cv18/SPM/MD**

**WALTER A. MCNEIL,[1]**
    **Respondent.**

---

### ORDER and
### REPORT AND RECOMMENDATION

**Before the court is a second amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 9).  Respondent has filed a response (doc. 17) to which petitioner has replied (doc. 22).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).   After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

---

**[1]Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).**

## BACKGROUND[2]

In October 1999, Lisa Dearman had been living "on the street" for about two years, and had a room at the El Panama hotel in Panama City, Florida.  She was 5' 6" tall and weighed 100 pounds.  In the early morning hours of October 18 she rode her bicycle to her source of drugs and purchased a "cookie" of crack cocaine for about $200.  She returned to her room at the El Panama, broke the cookie into smaller "rocks," and hid them in an empty magic marker.

Soon thereafter the petitioner, who was staying at the El Panama while in town on a construction job, knocked on her door and asked to buy a $20 rock.  Ms. Dearman was getting her cocaine out when petitioner said he wanted to look in the bathroom to make sure there was nobody there who might attack him.  When he came out of the bathroom he was holding a shoestring.  Ms. Dearman knew what was about to happen, and dropped her hands.  Petitioner placed the shoestring around her neck and tightened it slowly.  Ms. Dearman went to sleep.  She awoke lying on the floor, got up, was struck in the head with a Pyrex dish, and lost consciousness again.  When she awoke she got up, went outside, and tried to wake a woman who lived in a nearby room, without success.  She then went to the manager's office apartment and rang the bell.  The manager came out.  Petitioner appeared from nowhere, asking who "did this" to her.  Soon an ambulance came and took her to the emergency room.

The police questioned those present.  Petitioner told them that he was asleep in his room and got up to go to the bathroom.  He couldn't go back to sleep, so he called his wife.  Then he saw a woman walking dazedly past his window.  He went

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

out to see what was going on and found Ms. Dearman, and helped her to the office. He had blood on his hands and arms which came from helping Ms. Dearman.

Medical personnel testified that Ms. Dearman had two fresh wounds on her neck consistent with a ligature, she had been stabbed in the neck and chest with a round instrument, her left ear was nearly torn off, and she had massive skull fractures and a depressed cranium on the left side of her head.  She ultimately had multiple surgeries, was left blind in her left eye with facial paralysis on the left side resulting in the inability to close her left eye, and had pronounced speech and hearing problems.  She had very little memory of the attack.

Forensic evidence established that petitioner's bloody fingerprint and bloody palm print, with Ms. Dearman's blood, were found in her room.  There was blood everywhere, particularly around her bed.  There were bloody tissues and a bloody Pyrex dish in the bathroom.  Testimony from a blood spatter expert indicated that Ms. Dearman had been hit with great force while on or near the bed, hit again as she fell off the bed, and hit twice while she lay on the floor.  The stab wounds in her neck and chest were made by a crack pipe fashioned from a tire pressure gauge.

Crime scene officers noted and photographed a small steak knife in a tennis shoe behind the door.  There was no blood on the knife or the shoe, or in their immediate vicinity, and the officers concluded that the knife was not involved in the crime, so they did not collect it.

Petitioner moved home to Alabama when his job was finished.  Soon fingerprint experts determined that the bloody prints were sufficient to make comparisons, so the police asked petitioner to supply a set of prints, which he did. The results came back as a match to petitioner.

A police officer, Sgt. Bates, went to Alabama with a warrant for petitioner's arrest, and asked him to come to the local sheriff's office to talk.  Petitioner was appropriately warned of his *Miranda*[3] rights and signed a waiver.  He then gave the

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966).

detective a recorded statement consistent with what he had told police the night of the crime.  He was then told that his bloody prints were in the room.  Petitioner said that was impossible - that he had been in the room to buy drugs, so his fingerprints were probably there, but not with blood on them.  He suggested that the prints be tested again.  He then changed his story.  He asked that the recorder be turned off and that the other officer in the room leave.  Sgt. Bates agreed, and there was an unrecorded discussion.  Petitioner then gave a second recorded statement in which he related that he had given Ms. Dearman $300 to buy drugs for him; that she came back and said she had lost his money; that he told her he just wanted his money back; that she drew a knife and tried to attack him; that he got the knife away from her and choked her with a shoestring to put her to sleep and she went limp, but then got up to attack him again; that he picked up a crack pipe lying on the bed and thrust it at her as she attacked, hitting her in the neck, and finally hit her with a Pyrex bowl.  He then went back to his room and called 911.  He did not call 911 from Ms. Dearman's room because he knew she had not paid her telephone bill.  Moments later he saw Ms. Dearman trying to awaken a neighbor, so he went out and helped her to the office.

Petitioner was charged with attempted first degree murder.  The two recorded statements were played to the jury.  Petitioner did not testify.  The jury found him guilty of the lesser included offense of attempted second degree murder.  He was sentenced as an habitual violent felony offender to thirty years in prison.  His appeal was unsuccessful.  *Thomas v. State*, 786 So.2d 1234 (Fla. 1st DCA 2001) (Table).

## LEGAL STANDARDS

### Section 2254 Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the

Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2008).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neeley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be

contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226-27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

<u>Ineffective Assistance of Counsel</u>

All eleven of petitioner's grounds for relief in this court are grounded on his contention that he was denied his constitutional right to the effective assistance of counsel. In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness. *Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

## PETITIONER'S GROUNDS FOR RELIEF

In the instant federal habeas proceeding, which respondent concedes is timely (doc. 17, p. 6), petitioner raises eleven grounds for relief. As will be explained below, only three of those grounds were properly exhausted in the state court. The remaining eight are procedurally defaulted. The court will therefore discuss the three properly exhausted claims in detail, will then explain why the other claims were not properly exhausted, and will then discuss them briefly for the sake of completeness.

<u>Ground 1.</u>   <u>Ineffective assistance of counsel - failure to impeach the victim.</u>

For his first ground for relief petitioner contends that his attorney should have impeached Ms. Dearman for three inconsistencies between her testimony and other evidence because: (1) she testified that there was no knife in her room, although there might have been one in a box under her microwave, yet the police found a knife in a shoe; (2) she testified that none of her tennis shoes had missing laces, yet the police found that one shoe had no laces; and (3) she testified that she did not resist, yet the crime scene experts testified that there had been a massive fight.

Petitioner argues that counsel should have re-called Ms. Dearman for cross-examination as the trial court suggested because the existence of the knife in the shoe did not come out until after Ms. Dearman had testified.

### State Court Decision

This ground was presented to the state court in a motion for post-conviction relief pursuant to Rule 3.850, Fla.R.Crim.P. The Rule 3.850 court held a hearing on the issue but found that it lacked merit (doc. 17, ex. J, p. 301-02).[5] Petitioner appealed, and the appellate court reversed, holding that the Rule 3.850 court erred in denying petitioner's motion for the appointment of counsel. *Thomas v. State*, 846 So.2d 634 (Fla. 1st DCA 2003). Counsel was appointed, and a new hearing was held. The court again denied relief. Applying *Strickland*, the court found that counsel was not ineffective because (1) he made a sound tactical decision not to re-call Ms. Dearman to confront her with the knife found in her room because she had been terribly injured, made a sympathetic witness, and putting her back on the witness stand could evoke even more sympathy, and (2) the issue of whether there was a fight was no issue at all, because Ms. Dearman remembered little of what happened and testified that she was "high." (Ex. P, pp. 456-57). The court did not mention the shoelace claim. Petitioner again appealed, this time unsuccessfully. *Thomas v. State*, 914 So.2d 959 (Fla. 1st DCA 2005) (Table).

### Federal Review of State Court Decision

The matter of the knife being found in a shoe in Ms. Dearman's room came as a complete surprise to nearly everyone. Because the crime scene investigators did not consider the knife to be relevant to what happened, they photographed it but did not collect it for evidence (ex. B, p. 162). On the morning of trial the prosecutor noticed what looked like a knife handle in a photograph of a shoe, and asked about it. It was then that she learned of the knife. The existence of the knife came out during the testimony of one of the police officers, after Ms. Dearman had already

---

[5]Hereafter all references to exhibits will be to doc. 17 unless otherwise noted.

testified.  Defense counsel immediately moved for a mistrial, arguing that this was a *Brady* violation because given the defense strategy that petitioner was defending himself, the knife was clearly exculpatory.  The court denied the motion for mistrial, saying that counsel could re-call Ms. Dearman and confront her with proof that there was a knife in the room, contrary to what she had claimed.  The trial ended without Ms. Dearman being re-called.

The Rule 3.850 court made a fact finding that counsel's overall decision not to re-call Ms. Dearman was tactical, and concluded that it was reasonable. "Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component."  Whether a particular decision by counsel was a tactical one is a question of fact, *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Herring*, 42 F.3d 1350, 1367 (11th Cir. 1995); *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, *Hardwick* at 1163; *Jackson*, 42 F.3d at 1367; *Horton*, 941 F.2d at 1462, and habeas relief is mandated only where the trial court's decision was either contrary to, or an objectively unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1).  Moreover, counsel's tactical decisions on which defense to pursue are "virtually unchallengeable." *Provenzano*, 148 F.3d 3127, 1332 (11th Cir. 1998) (quoting *Strickland*); *Waters v. Thomas,* 46 F.3d 1506, 1522 (11th Cir. 1995)); *cf. Miller v. Anderson*, 255 F.3d 455, 458 (7th Cir. 2001) (the fact that something was a tactical decision does not immunize it from review under *Strickland*).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation marks and citation omitted); see also *Waters v.*

*Thomas*, 46 F.3d at 1518-19 (observing that "[w]e cannot, and will not, second guess" the "strategic decisions trial counsel are called upon to make"). "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001).

After all, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *accord Waters*, 46 F.3d at 1522 ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").

In fact, "a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course." *Rogers v. Zant*, 13 F.3d at 387.  Accordingly, counsel's decision to curtail investigative efforts is also presumed reasonable, and the exclusion of other viable defenses does not establish ineffective assistance unless it is demonstrated that the course counsel actually chose was itself unreasonable.  *Chandler*, 218 F.3d at 1318.

This court obviously did not observe Ms. Dearman's presence during her testimony (although the Rule 3.850 court did), but the undersigned has read the entire trial transcript, and can say that Ms. Dearman's testimony was halting, was obviously emotionally painful, and although fragmented as a result of her injuries, was effective.  Putting her back on the stand was a real concern for defense counsel, not only because it would reinforce her injuries, but because there was scant chance that it would have done any good.  Petitioner tells this court that it would have made a difference in the outcome, but the court disagrees.

At the evidentiary hearing on petitioner's motion for post-conviction relief,

defense counsel confessed ineffectiveness in not re-calling Ms. Dearman (ex. J, pp. 514-15).  However, the Rule 3.850 court noted that under Florida law, an attorney's own admission of ineffectiveness is of little persuasion in post-conviction proceedings. *Kelley v. State*, 569 So.2d 754, 761 (Fla.1990); *Johnson v. Wainwright*, 463 So.2d 207 (Fla. 1985).  The same is true in federal cases. *Chandler*, 218 F.3d at 1303 ("We look at the acts or omissions of counsel that the petitioner alleges are unreasonable and ask whether some reasonable lawyer could have conducted the trial in that manner.  Because the standard is an objective one, that trial counsel (at a post-conviction evidentiary hearing) admits that his performance was deficient matters little."); *Atkins v. Singletary,* 965 F.2d 952, 960 (11th Cir. 1992) ("[I]neffectiveness is a question which we must decide, [so] admissions of deficient performance by attorneys are not decisive.").  This court will not give counsel's admission credence.

Counsel's admission of deficient performance and resulting prejudice is not entitled to credence because, assuming for the sake of argument that Ms. Dearman had been re-called and confronted with the knife, it is likely she would have acknowledged its presence.  Petitioner says that this would have proven his self defense claim, and produced a different result.  However, the prosecutor addressed this possibility in her closing argument.  She noted (1) that there was no blood on the knife or the shoe, or in their vicinity, so it could not logically be argued that Ms. Dearman, whom a police officer described as someone who had a bucket of blood dumped on her (ex. B, p. 95), hid the knife in the shoe after she was beaten, (2) that even if it were true that Ms. Dearman attacked petitioner with a knife, petitioner's version of the incident showed that he got the knife away from her, but then choked her with a string, stabbed her, and finally hit her with a Pyrex dish.  His self defense argument was simply a loser.  As the court instructed the jury, to succeed in that defense, petitioner had to exhaust "every reasonable means to escape the danger other than by using force likely to cause death or great bodily harm[,]" and that he

could use force only if a reasonable person under those circumstances would believe the danger could be avoided only by the use of force. (Ex. B, p. 599).  In his statement to the police, petitioner said he "was able to get the knife out of her hand and I pushed her over on the bed and I grabbed a string she had laying there and, yeah, I put it around her neck and I told her just to stop, leave me alone, stop fighting with me, just leave me alone give me my money." (Ex. B, p. 259).  As the prosecutor argued, petitioner could have walked out of the room after he got the knife away from Ms. Dearman, but he wanted his money.  No reasonable jury would have accepted his self defense claim under these facts.  Consequently, counsel's decision not to re-call Ms. Dearman concerning the knife was not deficient or prejudicial.

The same is true on the shoelace issue and the fight issue.  Petitioner admitted choking Ms. Dearman with a string.  The investigators testified that they found a tennis shoe with missing shoestrings.  Ms. Dearman, who had suffered massive head injuries, testified that none of her shoes were missing strings, so her testimony disagreed with the investigators.  But it hardly mattered where the string came from, so impeaching the victim on a non-issue would have been dangerous given her physical and mental conditions.  Counsel's decision not to re-call her to the stand for that purpose was sound.

Petitioner contends that there was a fight, but Ms. Dearman said she did not resist, so she should have been impeached on this testimony since there obviously was a fight.  But Ms. Dearman said she did not remember much after she was strangled, and contrary to petitioner's claim, the blood spatter expert did not testify that there had been a fight.  She testified that blood spatter evidence showed that Ms. Dearman was struck with great force while she was on or near the bed, was struck again as she fell, and was struck twice as she lay on the floor (ex. B, pp. 450-482).  No reasonable jury would have found that this undisputed testimony proved there was a fight, much less that petitioner was reasonably defending himself from

a small woman with a knife.  On the other hand, if, as petitioner insists, there was a fight, the physical evidence proved beyond a reasonable doubt that the fight was entirely one-sided.  Again, counsel's decision not to re-call the victim was sound. Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Ground 4.    <u>Ineffective assistance of counsel - failure to investigate victim's</u>
<u>toxicology level.</u>

In his fourth ground for relief petitioner contends that his counsel was ineffective for not determining the level of cocaine or other substances in Ms. Dearman's body.  He told his lawyer that Ms. Dearman was very high, which made her pain tolerance high such that she kept coming at him as he tried to defend himself.  This would have fortified his self defense claim.

<u>State Court Decision</u>

The Rule 3.850 court found that this claim lacked merit because Ms. Dearman testified that she was high.  Moreover, the court noted that counsel attempted to cross-examine the pathologist on the test results, but the court sustained the state's objection.  Also, the court found that if counsel had put an expert on to testify on the effects of the cocaine and opiates in Ms. Dearman's system, he would have given up the right to open and close in final argument, and he made a reasonable strategic decision not to give up that position.  (Ex. J, p. 459).

<u>Federal Review of State Court Decision</u>

As noted above, the Rule 3.850 court's finding that counsel made a strategic decision is presumptively correct, and the burden of overcoming that presumption is on the petitioner.  *Kelley v. Sec'y for Dep't. of Corr.*, 377 F.3d 1317, 1353 (11th Cir. 2004).  Petitioner has failed to meet this burden.  Retaining first and last argument has been approved as appropriate trial strategy.  *Id.*  Moreover, petitioner has failed

in a more fundamental way.  He has not given this court any evidence, either fact or opinion, to support his claim that an expert would say that the level of cocaine in Ms. Dearman's body on the morning of the crime was so great as to have made her the aggressor as petitioner claims.  This court will not "'blindly accept speculative and inconcrete claims . . . .'"  *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653f2d942, 947 (5th Cir. 1981)).  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[6]  Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).   Petitioner argues that Dr. Stringer (the surgeon who repaired petitioner's head injuries) "could have testified as to the contents of the toxicology report, and gave his expert opinion of how a person would act under the influence of cocaine and opiates" which would have helped prove Ms. Dearman was the aggressor (doc. 9, Issue Four continuation).  Petitioner's speculation is the sort of bald assertion on a critical issue that has no probative value in this proceeding. This court will not speculate on what Dr. Stringer may have said.  Consequently, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

**Ground 5.    Ineffective assistance of counsel - failing to investigate and depose crime scene investigator.**

For his fifth ground for relief petitioner contends that his attorney was deficient in failing to discover the knife found in the shoe.  If he had taken the

---

[6] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

deposition of the crime scene investigator, he would have found out about the knife before trial, and could have used it more effectively at trial.

### State Court Decision

The Rule 3.850 court found that petitioner was not prejudiced by counsel's failure to find out about the knife.  It reasoned that since the knife was not collected by the investigators, they could have added nothing to what was proven at trial.  As discussed above, the knife handle appeared in a photograph of a shoe behind the door.  There was no blood on the knife or the shoe, or near them.  The police looked at the knife and concluded that it was irrelevant to the crime they were investigating.  The Rule 3.850 court noted that despite the absence of the knife at trial there was a photograph of the knife, but it made little difference because the evidence made it clear that the knife was not in Ms. Dearman's possession at the time the most severe injury was inflected upon her (ex. J, pp. 459-60).

### Federal Review of State Court Decision

Petitioner's basic claim is that counsel did not prepare for trial.  The trial transcript shows that the photograph of the knife in the shoe was among a large number of photographs taken at the scene.  Petitioner's counsel saw the photographs the day before trial and did not notice the knife handle.  The prosecutor noticed it the morning of trial (ex. B, p. 165).  The officer who took the photograph, Officer Plenge, testified that the knife was not collected at the scene, and was not mentioned in his report (*id*. at 161-62).  Before trial, petitioner's counsel took the deposition of the senior crime scene investigator, Sgt. Bates, and asked if a knife had been "recovered."  Sgt. Bates denied that a knife had been recovered (*id*. at 165).  So counsel missed three opportunities: he did not ask Sgt. Bates if a knife had been "seen" or "found," rather than "recovered;" he did not take the deposition of Officer Plenge, who took the photographs; and he did not notice the knife handle in the shoe when he examined the photographs before trial.  Petitioner asserts that this constituted deficient performance, and was prejudicial.

It was neither.  Counsel's performance was not deficient merely because it was not perfect.

> "[J]udicial scrutiny of counsel's performance must be highly deferential." Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .  In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

*United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003).  In the context of this case, petitioner must convince this court that *no other lawyer* would have missed the opportunities that his lawyer missed.  He cannot do so.  Asking a crime scene investigator if a knife was recovered was a perfectly reasonable question, and a negative answer led to the perfectly reasonable assumption that none had been found.   Counsel could have asked the follow-up question, but it was not unreasonable for him not to have done so.  In the real world, lawyers know that if police find a knife at a crime scene, they collect it.  It was only the unusual circumstances of this crime scene that made the officers decide that the knife had nothing to do with the crime.  Not noticing the knife handle in a photograph of a shoe, and not taking the deposition of a non-supervisory crime scene investigator, were not something *no other lawyer* would have done.  Counsel was not perfect, but he was not deficient.

Moreover, petitioner was not prejudiced.  As discussed in the first ground above, there was no blood on the knife or the shoe, or in their vicinity, so it could not logically be argued that Ms. Dearman, who was covered in blood, hid the knife in the shoe after she was beaten, and even if it were true that Ms. Dearman attacked petitioner with a knife, petitioner's version of the incident showed that he got the

knife away from her, but then choked her with a string, stabbed her, and finally hit her with a Pyrex dish, four times, twice while she was on the floor.  He could easily have escaped, and his argument to the contrary is not credible.  Ms. Dearman was a small woman, and according to Florida Department of Corrections' records, petitioner is currently 5' 9' tall and weighs 204 pounds.[7]  He was 32 years old when the crime occurred, so it is unlikely that he was any shorter than he is now. Although petitioner says his attorney could have won the case for him if he had known about the knife sooner, that is a conclusion unsupported by the facts adduced at trial.  Petitioner hit Ms. Dearman hard with a pyrex dish, hit her again when she was falling, and again, twice, when she was down, crushing the side of her skull.  Petitioner was not prejudiced by his attorney's failure to discover the existence of the knife before trial.  Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

<u>Grounds 2, 3, 6, 7, 8, 9, 10 and 11.</u>

As stated earlier, eight of petitioner's eleven grounds for relief are procedurally defaulted.  All are based on claims of ineffective assistance of counsel. The reason the claims are defaulted is that they were not properly presented to the state court for resolution.  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[8] thereby giving the State the "'opportunity to pass

---

[7]*See* www.dc.state.fl.us.

[8]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)   the applicant has exhausted the remedies available in the courts of the State; or

upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to

---

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction
> of an innocent person is extremely rare.  To be credible, such a claim

> requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

It is true that petitioner advanced all eleven of his present claims in his motion for post-conviction relief (ex. J, pp. 183-214), and it is true that he advanced all eleven claims in his appeal of the Rule 3.850 court's denial of his motion, and also argued that the Rule 3.850 court abused its discretion in refusing to appoint him counsel (ex. L).  However, the appellate court reversed without ruling on the merits of any substantive claim, noting only that when considering a request for counsel, any doubt should be resolved in favor of the indigent defendant.  It ordered the Rule 3.850 court to appoint counsel for petitioner and hold a new hearing (ex. J, pp. 329-30).  The hearing went forward on all eleven claims, and the Rule 3.850 court ruled adversely to petitioner (ex. J, pp. 455-65).  Petitioner appealed this order, but, through counsel, raised *only the first three grounds* discussed above (ex. P).  He did not appeal on the other eight.

Where, as here, petitioner received an evidentiary hearing, he was required to file an appellate brief.  *See* Fla. R. App. P. 9.141(b)(3).  He did file a brief, and his failure to address Grounds 2, 3, 6, 7, 8, 9, 10 and 11 in his brief constituted a waiver of those issues in the state court.  *See, e.g., Duest v. Dugger*, 555 So.2d 849, 851 (Fla. 1990) (holding that issues raised on appeal from order denying post-conviction relief were procedurally barred where petitioner received an evidentiary hearing on his Rule 3.850 motion and failed to fully brief and argue the points on appeal).  Therefore, Grounds 2, 3 and 6-11 are procedurally defaulted.  *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that petitioner, who had received an evidentiary hearing on his Rule 3.850 motion, procedurally defaulted his right-to-testify claim when he failed to argue it in his initial brief on appeal from the denial order; raising it in his reply brief was not proper exhaustion); *Cortes v. Gladish*, 216

Fed. Appx. 897, 899-900 (11th Cir. 2007) (stating that had the petitioner received an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those issues, and they would be considered procedurally defaulted).

Petitioner has made none of the requisite showings to excuse his default. He has not alleged cause for his default, and has presented no new evidence of his factual innocence. Therefore, these claims were defaulted and will not be considered in this court.

Even if the court were to consider them, federal habeas relief would not be warranted because the claims are meritless, as the following brief discussion demonstrates.

## Grounds 2, and ,3.

In these two grounds, petitioner contends that his attorney was ineffective because he did not ask for a continuance after the knife was discovered, and failed to claim that the state allowed concealment or destruction of the knife. If counsel had done either or both, the result would have been the same. The physical evidence showed that Ms. Dearman did not have the knife in her possession when she was being brutally beaten because there was no blood on or near it, and the physical evidence of petitioner's guilt and failure to retreat, even if Ms. Dearman brandished the knife, was overwhelming. Petitioner is not entitled to relief on these grounds.

## Ground 6.

Petitioner next says that his attorney failed to move to suppress a coerced confession. He asserts that in the first taped statement he gave his original version of events. There was then an off-the-record discussion and petitioner asked for a lawyer. However, Sgt. Bates refused to stop or get him a lawyer, and threatened him if he refused to confess, so his second statement was coerced. He further contends that he told his lawyer about this.

At the *first 3.850* hearing, counsel conceded that petitioner may have told him about the threats and request for counsel, but said he did not move to suppress because if the statement was suppressed, petitioner would have to testify in order to tell the jury that he was defending himself against Ms. Dearman's attack.   If petitioner testified and said anything contrary to what was in the statement, the statement would be an impeachment vehicle and at least portions of it would be introduced into evidence anyway.  Counsel wisely saw the statement as a vehicle for petitioner to testify without testifying live, and without being cross-examined.  If the statement was suppressed and petitioner did not testify, the jury would have not heard anything to support a self defense claim.  That would have left petitioner with *no* defense.  Also, petitioner never told counsel that the statement was false.  (Ex. K, 363-65).

At the *second* 3.850 hearing, counsel testified somewhat differently.  He said he did not think the statement would be suppressed and was not sure he wanted it suppressed, and wanted to get petitioner's testimony before the jury without putting him on the stand (ex. J, pp. 523-24).  However, he then admitted he was ineffective because he denied the petitioner the right to tell the jury his side of the story (ex. J, p. 528).

The Rule 3.850 court held that counsel's decision not to move to suppress the statement was a reasonable strategy.   Counsel had legitimate concerns about putting petitioner on the stand, and using the statement was the best way to have him tell the jury about his self defense claim without running the risk of being cross-examined (ex. J, p. 460).  The court also noted that under Florida law, an attorney's own admission of ineffectiveness is of little persuasion in post-conviction proceedings.  *Kelley v. State, supra; Johnson v. Wainwright, supra; Chandler v. United States, supra; Atkins v. Singletary, supra.*  Counsel's after-the-fact opinion on his own performance is not persuasive.

The Rule 3.850 court's ruling was amply supported.  Petitioner claimed self

defense. *All* the physical evidence was against him, including the unblooded knife, but he wanted to present that defense anyway. His attorney had two choices: try to have the statement suppressed, or not. There was a fundamental problem with trying to have the statement suppressed. In order to succeed, one of two things was required - either Sgt. Bates had to admit that petitioner asked for a lawyer and that he threatened and badgered petitioner into dropping the request, or the court had to accept petitioner's version of the event over contrary testimony from Sgt. Bates. Defense counsel understood that neither was likely to happen. But assuming for purposes of discussion that counsel succeeded in getting the statement suppressed, petitioner would then have no way of proving self defense without testifying. That would have subjected petitioner to cross-examination by the prosecution, who would dwell on his first two admittedly untrue versions of the events, who would ask him to explain his bloody fingerprint, and who would allow him to trap himself into saying something different from what was in his suppressed statement, which would have allowed the statement to come in anyway. The prosecution would also have been able to get petitioner to admit to his multiple prior felony convictions.

Petitioner has not offered this court any other way of proving self defense, nor is there any. Counsel had good reason to be concerned, and made a reasonable strategic decision not to move to suppress the statement.

Grounds 7, 8, and 10.

In these grounds petitioner contends that counsel was ineffective in failing to move for a directed verdict, in not calling a defense blood spatter expert, and in not moving for a directed verdict based on self defense. The Rule 3.850 court held that these claims were totally meritless, and they clearly are. Counsel moved for mistrial and for judgment of acquittal at the proper times. There were questions of fact for the jury, so there could be no directed verdicts. Petitioner says a blood spatter expert could have proven there was a fight, but he offered the Rule 3.850 court, and

he offers this court, no evidence to support this. The blood spatter issue was fully discussed above, and this court will not speculate on what another hypothetical expert may have said. *Raulerson v. Wainwright*, *supra*.

Ground 9.

Throughout these proceedings petitioner has made much of the missing knife, and here he raises it again.  He tells this court that counsel should have done a better job in final argument by pointing out inconsistencies in Sgt. Bates' testimony. Petitioner says that Sgt. Bates testified variously that (1) no knife was recovered, (2) he did not know if a knife was recovered, (3) a knife was recovered, and (4) they just forgot about it, because the knife had nothing to do with the crime.  (Doc. 9, Issue 9).  Petitioner told the Rule 3.850 court the same thing, without success.  This argument is meritless because it is factually incorrect.  Petitioner cites to page 288 of the trial transcript (ex. B), where Sgt. Bates is asked to explain the difference between the knife being recovered and being placed in evidence.  He explained that the knife was recovered, in the sense that it was found and examined, but that it was not taken into possession of the police.  There is perhaps a semantical difference here, but the truth is there was no difference at all.  The real issue was not what words were chosen by the police or the lawyers, but whether the police took possession of the knife.  Nothing in any officer's testimony suggested that they did. Arguing to the contrary would have been fruitless.

Ground 11.

For his final ground for relief petitioner says that counsel was ineffective in not raising juror misconduct.  After the verdict was announced, counsel told the court that Ms. Riehle, another assistant public defender, had just told him that she had spoken to the alternate juror after he had been released.  The alternate told her that members of the jury had discussed the case before all the evidence had been presented, and were leaning toward a conviction for first degree attempted murder. The court told counsel that this was not the time to raise that issue (ex. B, pp. 614-

15).  At the evidentiary hearing the alternate juror testified somewhat differently.  He said that he had indeed talked to Ms. Riehle, but had not told her of any juror impropriety, only that *he* was leaning toward conviction for first degree murder.  Ms. Reihle testified that she had talked to the alternate, who told her that *he* was leaning toward conviction for first degree attempted murder.  In its order denying the Rule 3.850 motion the court recited this testimony, and found that there was no jury misconduct, and therefore counsel did not perform deficiently (ex. J, pp. 462-63).  This fact finding is supported by the record.  Clearly there was a breakdown in communication between Ms. Reihle and defense counsel which caused defense counsel to inform the court, incorrectly, that there had been jury misconduct.  This was not ineffective assistance of counsel, and in any event, since there was no jury misconduct, there was no prejudice.

## CONCLUSION

The Rule 3.850 court held a lengthy hearing in which petitioner was represented by counsel.  It thoroughly discussed the issues raised here, and found no fault on counsel's part, and further found no prejudice.  The court noted specifically that the knife and self defense issues were unsustainable given all the other evidence, not least of which was petitioner's admission that he got the knife away from Ms. Dearman *before* any of the many severe injuries were inflicted on her (ex. J, pp. 463-65).  The jury did not accept petitioner's claimed self defense; no reasonable jury would have, even if the evidence and argument had been presented exactly as petitioner wishes.  This is not one of the "few and far between" cases in which counsel was constitutionally ineffective, *Rogers v. Zant, supra*, and this court should not disturb petitioner's conviction and sentence.

Accordingly, it is ORDERED that the clerk change docket to reflect Walter A. McNeil as the respondent, and it is respectfully RECOMMENDED that the petitioner's second amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254

(doc. 9) challenging the conviction and sentence in *State of Florida v. Thomas J. Thomas*, in the Circuit Court of Bay County, Florida, case no. 99-2721, be DENIED, and that this cause be DISMISSED and the clerk be directed to close the file.

At Pensacola, Florida this 21st day of November, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).